### No. 5707.

### LAWRENCE GRAVES *v*. THE STATE.

1. THEFT FROM THE PERSON—INTENT—FACT CASE.—In theft from the
   person, as in general theft, the property must be taken without the
   consent of the owner; or, if the possession was lawfully obtained, it must
   have been obtained by the taker by some false pretext, or with the
   present intent to deprive the owner of the value of the property and ap-
   propriate it to his (the taker's) own use, and there must be an actual ap-
   propriation. See the statement of the case for evidence *held* insufficient
   to support a conviction for theft from the person, because insufficient to
   establish the fraudulent intent at the time of the taking.
2. SAME—CONSENT—CHARGE OF THE COURT.—If the accused, when he
   obtained possession of the property, did so without false pretext or
   fraudulent intent, and believed that he had the consent of the owner to
   the taking, he would not be guilty of theft, even though he subsequently
   converted the property to his own use. This rule, applying to the state
   of case made by the proof, should have been given in charge to the
   jury.

APPEAL from the District Court of Collin. Tried below before
the Hon. H. O. Head.

The conviction in this case was for theft of ten dollars from
the person of Thomas Moore, in Collin county, Texas, on or
about December 1, 1887. The penalty assessed against the ap-
pellant was a term of two years in the penitentiary.

The opinion states the substance of the testimony of Thomas
Moore, the prosecuting witness.

Mr. Hedrick was the next witness for the State. He testified,
in substance, that he recollected the occasion on which Thomas
Moore claimed to have lost some money in his store. Moore
made some purchases, and gave witness a twenty dollar gold
piece in payment. Witness gave him change in a ten dollar

bill and some silver.   He afterwards observed the defendant and others in the back room of the store, the said Moore with the ten dollar bill in his hand, offering to bet that his horse could out pull any horse in town.   The several parties in the back room at that time were drinking.   When witness presently left the store he saw Moore in the room, still holding the ten dollar bill and offering to bet it on his horse.   He did not see Moore throw any money down, either on the counter or on a whisky barrel.   Witness was away from his store about ten minutes.   When he came back somebody said that defendant had Moore's money.   Witness told defendant to return it to Moore.   He replied that he did not have it, but had already returned it to Moore.   Moore denied that defendant had returned his money, and witness started after City Marshal Warden.   Just as he started, somebody said: "Graves is going off."   Witness then went to his back door and saw the defendant leaning against the side of an out house, between twenty and thirty feet distant from the back door of the store.   Witness called to defendant to come back, which, after a few minutes hesitation, he did.   Defendant's person was then searched, but no money was found on him.

Cross examined the witness said that defendant was searched in his presence. . His coat and boots were pulled off.   The witness paid no particular attention to the parties before it was claimed that Moore's money was taken from him.   When he last observed Moore before that time, he had the ten dollar bill in his hand offering to bet it that his horse could out pull any horse in town.   The back room, which contained buggies, barrels and a stove, was separated from the store room by a plank partition.   The several parties were in that back room around the stove, and all were drinking.   Williams was not drunk, but may have been drinking some.   The back way was used largely by persons coming in and going out of the store.   Witness made a close search of the rear premises, especially about the outhouse where he saw defendant standing after the money was claimed to have been stolen, but found nothing.   Chapman and George Washington did the searching.   Washington was not searched.

Joseph Williams testified, for the State, that he saw the defendant take the ten dollar bill from Moore's vest pocket.   The witness had offered to bet Moore ten dollars that he could produce a horse that could outpull any horse that he, Moore, could get.   Moore did not appear to be particularly anxious to bet,

when defendant said: "I'll bet you ten dollars." Witness replied that defendant had no money. He said: "I can get it," reached over, dipped his fingers into Moore's vest pocket and took out the ten dollar bill, held it up in his hand, displaying it, and said: "Here's the money; I'll bet you." He took the money from Moore's pocket by a very quick movement. Witness left the room presently, at which time defendant was still holding the ten dollar bill in his hand. When witness, after a few moments, went back into the room, somebody said that Moore had lost his money, and that defendant had it. Defendant said that he had returned it to Moore, which Moore denied. The witness then advised a search of the various parties. The search was made but discovered no money. Defendant was out of the house for a few minutes just previous to the search. He went out about the time the talk about the loss of the money got under headway. Mr. Hedrick called him back.

Cross examined, the witness said that he stepped out of the room while the several parties were drinking. Defendant had the ten dollar bill in his hand when witness left the room. Moore neither said nor did anything when defendant took the money from his pocket, nor while he was offering to bet it. Witness did not hear him say anything, nor did he search defendant in witness's presence. Chapman and Washington did the searching. All of the parties were drinking, and Moore was rather "boozy." Witness did not see Moore throw any money on either the counter or barrel. Witness had taken a drink, but was not drunk.

City Marshal Warden testified that, on the evening of the day alleged in the indictment, Moore came to him and reported the loss of a ten dollar bill, which, he said, defendant took from him at Hedrick's store. Witness went to Hedrick's store and was told that the defendant had gone home. Witness then went to the home of defendant and found him sitting on the side of a bed, putting on his pants. Jane Inman, a negress, was the only person in the house besides defendant. Witness searched defendant and his premises, but found no money.

The State rested.

William Maxey was the first witness for the defense. He testified, in substance, that he was not at Hedrick's store when the money was claimed to have been lost. He left the store a short while before that occurrence. When he left there, Tom Moore, defendant and others were in the store, drinking whisky.

Sam Johnson testified that he went into Hedrick's store while the dispute about the alleged stolen money was going on. He saw defendant when he left the room just before the search, and while he was out of the room at that time. Had defendant attempted to hide the money, or had he thrown it away, witness would certainly have seen him. He neither hid nor threw any thing away that witness saw. Witness saw Chapman and Washington search defendant after he came back into the house. They took off his coat and boots; pulled his pants down and his shirt up and examined every part of his person where money could have possibly been hidden, but found nothing. They searched Moore, but found no ten dollar bill.

George T. Armstrong testified, for the defense, that he was one of the proprietors of the store in which Moore was said to have lost his money. Witness was not in the store when the dispute about the money began, but came in while it was going on. His understanding about the matter was that defendant took the money either from Moore's pocket or hand, and was offering to bet it with Williams on the pulling qualities of some horses, and Moore sided with the defendant. It was witness's understanding that defendant returned the money to Moore, and that Moore soon missed it, and charged defendant with having kept it. Moore denied that defendant returned the money, and defendant insisted that he did. Witness searched the rear of the building and over the ground outside of the house, but found no money. Witness saw the searching of the defendant. Defendant took off his boots and coat, and his person was otherwise searched, but no money was found on him. Several negroes (defendant and Moore were both negroes) were then in the back room, jowering worse than a colony of monkeys.

Defense then read from Tom Moore's evidence on the examining trial, as follows: "I only searched two of defendant's pockets. I did not have the money in my hands. I was standing there, offering to bet with Mr. Williams, when defendant took the money. I did not have the money in my hand. I had stuck it back in my pocket. I took a handful of money out of my pocket, threw it down on the head of a barrel, and said: 'There's money; I'll bet fifty dollars.' Defendant and I had been drinking all day."

Mr. Chapman testified, for the defense, that he went into Hedrick's store during the progress of the dispute about the lost money. The defendant was then so drunk that he could only

walk about by holding to the counter. Soon after witness entered the room defendant said that he was going home, and started out the back way. Witness followed, and advised him not to go. He went to a point a few steps beyond the back door, and returned to the room when called by Hedrick. He was then searched, but nothing was found on his person. This witness said, on cross examination, that a proposition was made to search all parties. It was about that time that defendant started off, saying that he was going home. Defendant did not get out of witness's sight until after he was searched. He did not hide, nor attempt to hide, anything after leaving the parties in the room before the searching. George Washington searched the defendant. He was not deputed by anybody to do the searching, nor did anybody object to his doing it. He assumed the job of his own volition.

The defense closed.

Anderson Bell testified, for the State, that he was present and saw defendant dip his fingers into Moore's vest pocket and take a ten dollar bill from it. Defendant went out of the house before the several parties were searched. Witness called him to come back before he passed out at the door, but he went on to the corner of the lot. Hedrick then called him, and he came back and was searched.

The motion for new trial raised the questions discussed in the opinion.

*W. M. Abernathy* and *J. A. Evans,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

HURT, JUDGE. This is a conviction for theft from the person. The testimony of the prosecuting witness is in effect as follows: "I know defendant; saw him about the latter part of November, 1887, in McKinney, in Hedrick's store.   *   *   We sat about the store until about twelve o'clock. At this time a man by the name of Williams, George Banks, Anderson Bell and George Washington were in Hedrick's back room, talking. Defendant took a ten dollar bill from my vest pocket, which I had on at the time. I saw him take it. It was taken quickly, almost in a second; he just dipped his fingers in my pocket and pulled it out as quick as he could. The bill was a ten dollar bill, and taken without the consent, etc.   *   *   After defendant took

my money, we stood around talking, and then took a drink of whisky, and I demanded my money of defendant, who denied he had it, and said he had given it back to me.    After talking awhile, some one proposed a search, and defendant at once left and went some sixty feet—out of my sight.   Mr. Hedrick stepped to the door and called him back.   He came back and was searched, but no money was found on him.    *    *    *    I was offering to bet Williams that my horse could out pull any horse in town.    Williams wanted to bet on a horse.    While this was going on between us, defendant stepped up, took the money from my vest pocket, said 'you haven't got any nerve to bet; I will bet him,' and stood there at arm's length, talking about the bet for ten minutes, when we all took drinks, and I then asked defendant for my money.  He denied having it; said 'search me,' and I did so, and failed to find it.    *    *    *    While defendant stood by me with my money, he had it in his hand, twirling it in his fingers, and I made no objection in any way and did not object to the bet he was offering to make with Williams.   I said nothing about it one way or the other.   I could reach him without moving at any time during the ten minutes.  I never tried to stop him or to retake my money.    *    *    I was sober but I think Graves was drunk and all the others nearly so."  The above testimony presents the case more strongly against appellant than the evidence of the other witnesses.

In theft, general or from the person, the taking must be without the consent of the owner; or, though lawful (with consent), the possession of the property must be obtained by some false pretext, or with intent to deprive the owner of the value of the property and appropriate it to the use of the taker, with an actual appropriation.   If there be consent to the taking, and this consent is not obtained by false pretext, or there is no intent to deprive the owner of the value, accompanying the taking, there can be no theft under articles 745 and 748.   That there was no false pretext used by appellant is clear; hence, to convict under this indictment, the proof must show that the fraudulent intent existed at the time of the taking.   This must be shown to the jury beyond a reasonable doubt and to this court with reasonable certainty.

Applying the facts of the case to these rules they, the facts, fail to establish the intent with reasonable certainty, and to hold them sufficient to sustain the verdict would be a dangerous precedent. 'If, when appellant took the money, he believed he had

the consent of the owner, in the absence of false pretext, he is not guilty of theft, though he may afterwards convert the same to his own use, etc.; and, notwithstanding the learned judge gave to the jury a very clear and excellent charge in all other respects, we think the circumstances of this case demanded this proposition to be submitted to the jury, it having been requested by the defense.

Because the evidence is not sufficient to support the verdict, and because the court failed to give the fourth charge requested by appellant, the judgment is reversed and the cause remanded.

*Reversed and remanded.*